IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| THE SATANIC TEMPLE, INC., and ADAM VAVRICK, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO, <br><br> Defendant. | Case No. 23-cv-2780 <br><br> Hon. Joan H. Lefkow |

### CITY OF CHICAGO'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6)

Defendant City of Chicago respectfully moves the Court for an order dismissing the Complaint of Plaintiffs The Satanic Temple, Inc. and Adam Vavrick (together, "TST") under Federal Rule of Civil Procedure 12(b)(6). TST challenges the City's practice of selecting clergy to deliver invocations before Chicago City Council meetings. TST contends that by declining to schedule Vavrick to deliver an invocation when he requested to do so, and by failing to create a process under which he could apply to deliver an invocation, the City violated the First Amendment. But TST fails to plead a violation of either the Free Speech or the Establishment Clause of the First Amendment. As the Seventh Circuit has held, legislative prayer is government speech, and as such, it is not regulated by the Free Speech Clause. That means that the City may select clergy to deliver a prayer at its discretion; it need not give anyone who would like to deliver an invocation an opportunity to speak. And the City's invocation practices easily survive an Establishment Clause challenge: they comport with longstanding practice dating back to the First Congress, and TST alleges no facts suggesting they have been used to proselytize or to disparage those of other faiths. The Complaint should therefore be dismissed with prejudice.

**BACKGROUND**

As TST alleges in the Complaint, the City "has a longstanding practice of inviting clergy to open each meeting of its City Council with a prayer." (Compl. ¶ 2.) The City Council opens its legislative sessions with "an invocation delivered by a local clergy member," which is a "brief, uplifting prayer" that seeks "spiritual guidance" for City Council members as they undertake their work. (*Id.* ¶ 16.) Clergy from different congregations in different parts of the City have given the invocation; recent invited invocators include clergy from Mount Carmel Bible Church, Park Community Church in Hyde Park, and St. Luke Church of God in Christ. (*Id.* ¶ 17.)[1] The City Clerk's Office selects clergy to invite, using its discretion. (*Id.* ¶ 4.) The City does not have a process by which clergy may apply to give an invocation. (*Id.* ¶¶ 4, 33.)

The Satanic Temple is a non-theistic organization, (Compl. ¶ 11), which is headquartered in Salem, Massachusetts, (*id.* ¶ 9), and has an international membership, (*id.* ¶ 11). Its Illinois congregation was founded in 2016. (*Id.* ¶ 12.) Minister Adam Vavrick has held a leadership role in the Satanic Temple since April 2020. (*Id.* ¶ 13.) He conducts monthly services for his congregants. (*Id.* ¶ 14.) Vavrick would like to give an invocation before a City Council meeting. (*Id.* ¶ 18.) He has contacted the City Clerk's Office asking to be scheduled to give an invocation, (*id.* ¶¶ 19–23), but the City Clerk's Office has not invited him to deliver an invocation, (*id.* ¶ 3).

TST now alleges that by not scheduling Vavrick to deliver an invocation, or creating a process under which he may apply to give an invocation, the City has "violate[d] the First

---

[1] As publicly available recordings of City Council meetings show, during 2021–23, the City invited clergy from organizations including the Buddhist Temple of Chicago, Westpoint Baptist Church in Bronzeville, Quinn Chapel AME Church, Park Community Church in Forest Glen, All Nations Chicago, Liberty Baptist Church, the Chicago Sinai Congregation, and the Muslim Community Center. *See* https://vimeo.com/showcase/citycouncil. Recordings of City Council meetings are subject to judicial notice. *See Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011) ("We have recognized the authority of a court to take judicial notice of government websites.").

Amendment in two ways: (1) the City violates the establishment clause by excluding disfavored minority faiths from the opportunity to provide an invocation; and (2) the City grants the City Clerk unconstrained discretion to decide who can and cannot deliver an invocation." (Compl. ¶ 28.)

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a motion to dismiss, the court accepts as true all well-pleaded allegations, construing them in the light most favorable to the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). Conclusory allegations are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678. The Court may also take judicial notice of public records not attached to the complaint. *Olson v. Champaign Cty.*, 784 F.3d 1093, 1097 n.1 (7th Cir. 2015). A plaintiff may plead himself out of court if the pleadings allege facts that demonstrate the plaintiff cannot state a claim. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753–54 (7th Cir. 2002).

## ARGUMENT

TST claims that the City's selection of invocators violates the First Amendment because the City Clerk's Office exercises "unconstrained discretion to decide who can . . . deliver an invocation" and excludes "disfavored minority faiths from the opportunity to provide an invocation." (Compl. ¶ 28.) But as explained below, offering a religious invocation before a legislative session is government speech. The government's discretion to select who speaks on its behalf is an essential feature of government speech and does not implicate — let alone violate — the First Amendment. And TST does not allege facts demonstrating that the City Clerk's

3

Office's practice of selecting invocators — which is modeled on historical practice the Supreme Court and lower courts have repeatedly endorsed —violates the Establishment Clause by impermissibly favoring or denigrating anyone's beliefs.

I. **Because Invocations Are Government Speech, The City's Discretion To Choose Invocators Does Not Violate The First Amendment.**

TST argues that the City's practices violate the First Amendment because "the City grants the City Clerk unconstrained discretion to decide who can and cannot deliver an invocation." (Compl. ¶ 28.) TST complains that the City does not have "any established criteria for selection" of speakers, (*id.* ¶ 32), and does not make a process available "by which requests to provide an invocation before City Council are to be submitted," (*id.* ¶ 33). Thus, TST appears to claim that the methods the City employs to select invocators infringe on its free speech rights.

But the fact that the City Clerk exercises discretion in selecting invocation speakers does not violate the First Amendment, nor even implicate it. Instead, this "long-established practice of opening legislative meetings with prayer . . . concern[s] what a chosen agent of the government says as part of the government's own operations," which reflects the fact that the invocations are government speech. *See Ctr. for Inquiry, Inc. v. Marion Cir. Ct. Clerk*, 758 F.3d 869, 874 (7th Cir. 2014); *see also Gundy v. City of Jacksonville Florida*, 50 F.4th 60, 72 (11th Cir. 2022) (concluding that pre-city council invocation "constitute[d] government speech," and noting "agree[ment] with several sister circuits that have determined that legislative prayer constitutes government speech"); *Fields v. Speaker of Pa. House of Representatives*, 936 F.3d 142, 160 (3d Cir. 2019) ("Because legislative prayer is government speech, the Free Exercise Clause does not apply, and the [plaintiffs'] free-exercise claim fails.").

As the Supreme Court has emphasized, when the government puts forth its own message, "it is entitled to say what it wishes," *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S.

4

819, 833 (1995), and to "select the views that it wants to express," *Pleasant Grove City v. Summum*, 555 U.S. 460, 468 (2009). Because City Council invocations are government speech, the City may exercise its discretion to determine who it wants to invite to deliver an invocation.

TST mistakenly refers to the invocation as a "forum," from which the City may not "exclud[e]" speakers. (Compl. ¶ 31.) It similarly incorrectly characterizes the invocation as "public discourse." (*Id.* ¶ 30.) But a City Council invocation is not a First Amendment "forum," nor is it open to public discourse. As a result, TST's allegations that the City lacks "any clear process by which requests to provide an invocation" may be submitted, (*id.* ¶ 33), or any "selection criteria," (*id.* ¶ 32), and that the Clerk "picks and chooses" among speakers, (*id.* ¶ 30), and might select speakers arbitrarily, (*id.* ¶ 34), cannot establish a First Amendment violation. Those are simply hallmarks of the fact that invocations are government speech. As the Supreme Court bluntly put it: because the City "[is] engaging in [its] own expressive conduct . . . the Free Speech Clause has no application." *Summum*, 555 U.S. at 467; *see also Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015) ("When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says."). TST cannot state a claim that the City Clerk's alleged "unbridled discretion," (Compl. ¶ 34), violates the Free Speech Clause.

Thus, nothing in the First Amendment requires the City to allow TST to deliver an invocation merely because it has demanded to do so. Because selectivity is the *sine qua non* of government speech, see *Summum*, 555 U.S. at 471, the City chooses invocators at its discretion and need not create an application process to allow anyone to deliver a prayer who requests that opportunity. The Court should accordingly reject TST's demands that the City allow it to

"participate in providing an invocation" and "establish a clear process for submission and consideration of requests to provide invocations before City Council." (Compl. at 9.)

## II. The City's Invocation Practices Do Not Violate The Establishment Clause.

TST also claims that the City has violated the Establishment Clause by employing the invocations so as to "exclude[e] disfavored minority faiths." (Compl. ¶ 28.) As explained below, however, the City's invocation practice is modeled on historic traditions the Supreme Court has repeatedly affirmed as constitutional, and TST alleges no facts suggesting that the invocations disparage or denigrate those of other beliefs. The sole allegation TST offers in support of its claim is that Vavrick was not invited to deliver an invocation. That is insufficient to state a claim that the City's invocation practice violates the Establishment Clause.

### A. The City Council's invocations are consistent with historical practices approved by the Supreme Court.

Many state and local legislative bodies throughout the United States permit invocators to offer prayers at the start of legislative session days. That practice, as explained above, does not implicate the First Amendment's Free Speech Clause. While it can, however, implicate the Establishment Clause, *see, e.g.*, *Gundy*, 50 F.4th at 70 (calling the Establishment Clause "the proper constitutional vehicle to attack the government speech at issue" in legislative prayer), invocations before legislative sessions have been upheld by the U.S. Supreme Court in both *Marsh v. Chambers*, 463 U.S. 783 (1983), and *Town of Greece v. Galloway*, 572 U.S. 565 (2014). Under that precedent, the City's invocation practice easily survives an Establishment Clause challenge as well.

In *Marsh*, the Supreme Court explained the longstanding role legislative invocations have played in the nation's history, dating back to the framing of the Constitution. 463 U.S. at 786. Sessions of the U.S. Congress have included these invocations, uninterrupted, since the adoption

6

of the Constitution in 1789. *See Lynch v. Donnelly*, 465 U.S. 668, 674 (1984). The First Congress "authorized the appointment of paid chaplains" just three days before reaching final agreement as to the language of the Bill of Rights. *Marsh*, 463 U.S. at 788. Given the unbroken congressional practice of opening sessions since the First Congress with a religious invocation, the Supreme Court reasoned in *Marsh* that the Framers "[c]learly . . . did not view paid legislative chaplains and opening prayers as a violation of th[e First] Amendment." *Id.* Thus, in light of that historic tradition, the Court upheld the Nebraska state legislature's practice of opening legislative sessions with a prayer delivered by a paid chaplain. *Id.* at 793 n.14. The Court held that, even though the prayer fell exclusively "[with]in the Judeo-Christian tradition," was delivered only by a Presbyterian clergyman for a period of 16 years, and was paid for with public funds, the legislature's practice survived a challenge under the Establishment Clause when "[w]eighed against the historical background." *Id.* at 793. The Court emphasized that the content of invocations "is not of concern to judges where . . . there is no indication that the prayer opportunity has been exploited to proselytize or advance any one, or to disparage any other, faith or belief." *Id.* at 794–95.

In *Town of Greece*, the Court again emphasized that legislative invocations have historically been understood as acceptable under the Establishment Clause. 572 U.S. at 575–77. There, a town board's monthly meetings opened with sectarian invocations delivered by unpaid, volunteer prayer givers. The Court found that the town's "prayer practice . . . fit[] within the tradition long followed in Congress and the state legislatures," and rejected the argument that the Establishment Clause required that legislative prayers be nonsectarian. *Id.* at 577–81. The Court also rejected the argument that the town's prayer practice violated the Constitution because the prayer givers were predominately Christian. *Id.* at 585–86. As the Court explained, the fact that

7

most invocators were Christian did not suggest any "aversion or bias on the part of town leaders against minority faiths," and the Constitution did not require the town to engage in an effort to obtain "religious balancing." *See id.*

The Supreme Court has recently reaffirmed the historical approach used to evaluate Establishment Clause claims in *Marsh* and *Town of Greece*. In *Kennedy v. Bremerton School District*, the Court stated that the "Establishment Clause must be interpreted by 'reference to historical practices and understandings.'" 142 S. Ct. 2407, 2411 (2022) (quoting *Town of Greece*, 572 U.S. at 576). Applying this historical mode of analysis, courts have routinely upheld legislative and courtroom invocations against Establishment Clause challenges — even where, unlike here, the prayers reflected solely theistic or even solely Christian traditions. *See, e.g.*, *Freedom From Religion Found. v. Mack*, 49 F.4th 941, 957–58 (5th Cir. 2021) (finding that courtroom prayer comports with historical tradition and the Establishment Clause so long as it does not "denigrate nonbelievers or religious minorities, threaten damnation, or preach conversion") (citation and quotation marks omitted); *Barker v. Conroy*, 921 F.3d 1118, 1128–32 (D.C. Cir. 2019) (finding that the United States House of Representatives did not violate the Establishment Clause by limiting opening prayers to theistic speakers); *Bormuth v. Cty. of Jackson*, 870 F.3d 494, 512 (6th Cir. 2017) (finding that a county board's practice of opening meetings with prayers comported with historical tradition and withstood Establishment Clause challenge, even where the prayers "generally espouse[d] the Christian faith").

TST asserts that the Establishment Clause mandates that the City go further than this binding authority requires and "ma[ke] available" the opportunity to deliver a legislative prayer to anyone who would like to offer an invocation. (Compl. ¶ 1.) In support, TST cites the plurality opinion in *American Legion v. American Humanist Ass'n*, 139 S. Ct. 2067 (2019). (*Id.*) But the

8

full text of that decision actually undermines Plaintiffs' contentions; the Supreme Court reiterated its approval in *Marsh* of the invocation regime used by Congress, which closely resembles the City's:

> The practice begun by the First Congress stands out as an example of respect and tolerance for differing views, an honest endeavor to achieve inclusivity and nondiscrimination, and a recognition of the important role that religion plays in the lives of many Americans. Where categories of monuments, symbols, and practices with a longstanding history follow in that tradition, they are likewise constitutional.

*Am. Legion*, 139 S. Ct. at 2089.[2] As the opinion explains, the First Congress appointed chaplains to deliver the legislative invocations. *Id*. at 2087. Since then, Congress has also welcomed guest chaplains from a variety of faiths. *Id*. at 2088. But Congress does not allow anyone to apply to deliver an invocation. Notably, the House rules also require that the prayer be theistic, not secular. As the D.C. Circuit held in *Barker v. Conroy*, "the House's decision to limit the opening prayer to religious prayer" does not violate the Establishment Clause. 921 F.3d at 1130.

The Complaint contains no allegations that suggest the City's practice is not similar in all relevant respects to that of Congress. If anything, the City's practice is more inclusive than those the Supreme Court and circuit courts have approved, such as the First Congress's practice of having an official chaplain responsible for delivering invocations, the Nebraska state legislature's practice of opening legislative sessions with a nonsectarian prayer delivered by a paid Presbyterian chaplain, or the current House rule that invocations be theistic. City Council meetings have opened with invocations by faith leaders from Christian, Jewish, Muslim, and

---

[2] *American Legion* held that a World War I memorial monument in the shape of a Christian cross on public land did not violate the Establishment Clause because the cross had taken on secular meanings and historical importance over time. 139 S. Ct. at 2089; *see also Woodring v. Jackson Cty.*, 986 F.3d 979, 981 (7th Cir. 2021) (nativity scene on public land did not violate the Establishment Clause because it "fit[] within a long national tradition of using the nativity scene in broader holiday displays to celebrate the origins of Christmas — a public holiday"). Plaintiffs acknowledge that the City's invocation has similar historical importance; they allege the City has a "longstanding tradition of welcoming the clergy of local congregations" to offer invocations. (Compl. ¶ 18.)

Buddhist congregations — a broad spectrum across its neighborhoods and faith groups. That fully comports with the purpose of an invocation, which, as the Supreme Court explained, is "a moment for [City] leaders to recognize the achievements of their constituents and the aspects of community life that are worth celebrating," and a recognition of the "central place" that some religious institutions hold in the lives of citizens — both as "spiritual homes" and "provider[s] of social services for citizens." *Town of Greece*, 572 U.S. at 591. The fact that the opportunity to offer an invocation is not made available to every person who asks does not undermine that purpose, nor does it render the City's practice out of step with historical tradition or impermissible under the Establishment Clause.

### B. The Complaint does not allege that the invocation practice has favored or disparaged anyone's faith or beliefs.

There are some constitutional limits on legislative invocations, but nothing in the Complaint suggests the City Council's invocation practice has run afoul of them. In *Marsh*, the Court recognized that the Establishment Clause prohibits invocations from being "exploited to proselytize or advance [a particular faith] or to disparage any other." 463 U.S. at 794–95. Similarly, in *Town of Greece*, while upholding the invocation practice at issue, the Court noted that "a course and practice [that] over time shows that the invocations denigrate nonbelievers or religious minorities, threaten damnation, or preach conversion" would present a "different case." 572 U.S. at 583.[3]

Here, nothing in the Complaint suggests the City Council's invocation practice has been exploited to advance or disparage anyone's faith or beliefs. Although invocations are delivered

---

[3] As an example of a suit presenting a different case, the Fourth Circuit held that a county board of commissioners' opening prayer practice violated the Establishment Clause where prayers were exclusively Christian and repeatedly "suggest[ed] that other faiths [were] inferior" or portrayed non-Christians as "spiritual[ly] defect[ive]." *Lund v. Rowan Cty.*, 863 F.3d 268, 285 (4th Cir. 2017).

10

during public meetings — recordings of which are available on the City Council's website and accessible to TST — TST does not suggest that any invocator has used the invocation to proselytize, disparage any other faith, denigrate non-believers, or preach conversion. To the contrary, TST acknowledges that the "typical invocation" is a "brief, uplifting prayer in which [a member of the clergy] asks for spiritual guidance for members of City Council as they undertake their challenging work of representing the diverse communities of the City of Chicago." (Compl. ¶ 16.) TST also acknowledges that the City selects invocators from different religious organizations and different geographic areas of the City. (*Id.* ¶ 17.) Thus, TST's own Complaint alleges that the City's invocation practice is not a practice designed to disparage or denigrate anyone's beliefs.

TST alleges that the City has violated the Establishment Clause "by excluding disfavored minority faiths from the opportunity to provide an invocation." (Compl. ¶ 4.) But the only factual allegation it offers to support this conclusory statement is that Vavrick was not invited to deliver a prayer despite his repeated demands to do so. (*Id.* ¶ 17.) A claim that the City has not invited a particular individual to deliver a legislative invocation is not enough to state an Establishment Clause violation. *See Snyder v. Murray City Corp.*, 159 F.3d 1227, 1233 (10th Cir. 1998) ("[T]here can be no Establishment Clause violation merely in the fact that a legislative body chooses not to appoint a certain person to give its prayers."). Indeed, *Marsh* undermines entirely the argument that an Establishment Clause violation can be based on the exclusion of a particular speaker. After all, *Marsh* approved a practice where, for sixteen years, a single Presbyterian invocator delivered the prayer before the Nebraska legislature. 463 U.S. at 793. If Plaintiffs' logic were accepted, such a claim could be brought by almost any religious leader in the City — after all, the City has not invited *most* religious leaders to deliver an invocation. And accepting

TST's contention that the City must open the opportunity to deliver an invocation to every religious leader in the City — or even all those who ask — would force the City to employ the sort of "religious balancing" test that the Supreme Court has explicitly rejected. *See Town of Greece*, 572 U.S. at 585–86 (noting that a "quest to promote a 'diversity' of religious views would require the town to make wholly inappropriate judgments about the number of religions it should sponsor and the relative frequency with which it should sponsor each . . . a form of government entanglement with religion that is far more troublesome.") (internal quotations omitted). Thus, the mere fact that TST has not been invited to provide an invocation does not support an inference that the City's invocation practice denigrates nonbelievers or religious minorities.

TST's allegation that Vavrick attempted to "avail himself of the normal channels through which invocations are scheduled," (Compl. ¶ 19), does not suggest otherwise. As the Complaint concedes, the City does not solicit, accept, or deny applications to deliver invocations. (Compl. ¶ 33.) Rather, speakers are invited by the City Clerk. (*Id.* ¶ 28.) The fact that TST's unusual demand to deliver an invocation did not yield an invitation does not suggest the City has an "aversion or bias . . . against minority faiths." *Town of Greece*, 572 U.S. at 585. It suggests only that the City has continued its constitutional practice of deciding, in its discretion, what clergy it will invite to provide an invocation, and extending invitations to clergy from a variety of faith backgrounds and from institutions the City wishes to honor as key participants in City life.[4]

---

[4] The Complaint alleges that TST-IL is a relatively new organization, founded in 2016, (Compl. ¶ 12), that meets only monthly, (*id.* ¶ 14). TST does not allege that it has any brick-and-mortar location in the City. Although the City need not justify its discretionary decision to invite other invocators instead of Vavrick, it makes sense that the City Clerk would reach out to clergy from institutions with more substantial connections to the local community.

Lastly, TST notes that it is a "bona fide" religion, (Compl. ¶ 15), and has been recognized as such for certain legal purposes, such as performing marriages and presenting holiday displays in public places, (*id* ¶ 12). But that is irrelevant to its Establishment Clause claim. Indeed, it confuses Establishment Clause and Free Speech Clause jurisprudence. Marriage ceremonies are not government speech; when the state grants individuals the opportunity to solemnize a marriage, it acts in a regulatory capacity, not as a speaker. *Ctr. for Inquiry, Inc. v. Marion Cir. Ct. Clerk*, 758 F.3d 869, 874 (7th Cir. 2014). Similarly, holiday displays in a public forum are open to participation by the public. *See, e.g.*, *Capitol Square Rev. & Advisory Bd. v. Pinette*, 515 U.S. 753, 770 (1995); *Americans United for Separation of Church & State v. City of Grand Rapids*, 980 F.2d 1538, 1542 (6th Cir. 1992). An invocation, on the other hand, is government speech primarily offered for the council members, not private parties. *Town of Greece*, 572 U.S. at 587 ("The principal audience for these invocations is not … the public but lawmakers themselves."). As explained above, different rules apply to government speech, and the protections of the Free Speech Clause do not apply at all. That state and local governments have treated TST in a non-discriminatory fashion and allowed it to participate on equal terms with other organizations in public fora does not mean that, to comply with the Establishment Clause, the City must extend TST an invitation to speak on behalf of the City itself.

**CONCLUSION**

WHEREFORE, the City respectfully requests that the court dismiss TST's claims with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) and grant the City such other relief as it deems just and proper.

Date:   June 20, 2023                                            Respectfully submitted,

BRADLEY G. WILSON                                      MARY B. RICHARDSON-LOWRY,
bradley.wilson@cityofchicago.org                       Acting Corporation Counsel for
DAVID BRANDON SMITH                                     the City of Chicago
david.smith4@cityofchicago.org
City of Chicago, Department of Law            By:      */s/ Bradley G. Wilson*
Constitutional and Commercial                                Bradley G. Wilson
 Litigation Division                                                      Senior Counsel
2 North Lasalle Street, Suite 520
Chicago, Illinois 60602
(312) 744-7686 / 4-7220

*Attorneys for the City*