**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

THE SATANIC TEMPLE, INC., and
ADAM VAVRICK,

Plaintiffs,

v.

CITY OF CHICAGO,

Defendant.

Case No. 23-cv-2780

Hon. Joan H. Lefkow

## CITY OF CHICAGO'S OPPOSITION TO PLAINTIFFS'
## MOTION FOR PRELIMINARY INJUNCTION

Defendant City of Chicago respectfully submits this opposition to the Motion for Preliminary Injunction filed by Plaintiffs The Satanic Temple, Inc. and Adam Vavrick (together, "TST"). (ECF No. 7.) For the reasons explained below and in the City's Motion to Dismiss the Complaint, TST's request for injunctive relief should be denied.

### BACKGROUND[1]

In this action, TST challenges the City's "longstanding practice of inviting clergy to open each meeting of its City Council with a prayer." (Compl. ¶ 2.) The City Clerk's Office selects clergy to invite, using its discretion. (*Id.* ¶ 4.) The City does not have a process by which clergy may apply to give an invocation. (*Id.* ¶¶ 4, 33.)

TST argues it is entitled to a preliminary injunction because it is likely to succeed on its Establishment Clause claim, which is premised on the City's lack of response to TST's request to deliver an invocation, purported evidence of rejection based on disagreement with TST's beliefs, and allegations that the City has violated "the Establishment Clause's requirement of non-discrimination." (Mot. 8–9.) It claims that, by not inviting Vavrick to deliver an invocation, the

---

[1] A full summary of the Complaint is set forth in the City's Motion to Dismiss.

City has infringed upon its First Amendment rights, causing it irreparable harm. (*Id.* at 21.) And it argues that the balance of harms tilts in its favor here because "to establish clear limits on City officials' discretion would not harm the City's interests or the public interest because the City has no legitimate interest in infringing upon First Amendment rights." (*Id.*)

## STANDARD OF REVIEW

A plaintiff seeking a preliminary injunction bears a "significant burden." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1754 (2021). The plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 762 (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008)). This burden is substantial; "the mere possibility of success is not enough; [Plaintiffs] must make a 'strong' showing on the merits." *Id.* They must also show that harm is "likely" in the absence of an injunction, *Winter*, 555 U.S. at 22, rather than a "possibility of some remote future injury," *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 788 (7th Cir. 2011). Further, the relief requested in the Complaint would require the City to implement certain policies, and TST thus calls for a mandatory injunction. Such relief is "cautiously viewed and sparingly issued," and justified only "upon the clearest equitable grounds." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997) (citations omitted).

## ARGUMENT

TST has not demonstrated entitlement to the extraordinary relief of a preliminary injunction. The very description of the relief it seeks demonstrates that it will not suffer irreparable harm should the Court allow this matter to proceed in the usual course. Further, TST can show no likelihood of success on the merits — indeed, for the reasons set forth in the City's Motion to Dismiss, the allegations in the Complaint do not state a claim. Both the balance of the

2

equities and the public interest also counsel against an injunction in this case. The Court should therefore deny the Motion.

## I.     TST Has Not Shown It Will Suffer Irreparable Harm Absent Immediate Relief.

The extraordinary remedy TST seeks is not warranted because it has not shown it is likely to suffer irreparable harm in the absence of immediate relief. Analysis of the likelihood of irreparable harm "takes into account how urgent the need for equitable relief really is," *U.S. Army Corps of Eng'rs*, 667 F.3d at 788, and for several reasons, the facts here belie TST's assertion that the situation is so urgent as to justify a preliminary injunction.

First, TST delayed in requesting relief. The Complaint admits that Vavrick began contacting City officials about an opportunity to deliver the invocation in January 2020, and that he reiterated his request at various intervals until his last outreach two and a half years later in July 2022. (Compl. ¶¶ 19–24). Another 10 months passed after that communication before TST filed its Complaint (in May 2023) and the Motion (in June 2023). Besides two calls in March during which Vavrick and TST's counsel spoke to a City attorney, (*id.* ¶ 25), TST does not allege any further activity, nor does it explain this significant lapse of time. A "lengthy, unexplained delay in seeking relief calls into question 'how urgent the need for preliminary equitable relief really is.'" *Redbox Automated Retail, LLC v. Xpress Retail LLC*, 310 F. Supp. 3d 949, 953 (N.D. Ill. 2018) (quoting *U.S. Army Corps of Eng'rs*, 667 F.3d at 788) (18-month delay in seeking relief precluded finding of irreparable harm). Courts in this district have found even several months' delay undermines a finding of irreparable harm for purposes of preliminary relief. *See, e.g.*, *Tranchita v. Callahan*, 511 F. Supp. 3d 850, 882 (N.D. Ill. 2021) (four-month delay); *Ixmation, Inc. v. Switch Bulb Co., Inc.*, No. 14-CV-6993, 2014 WL 5420273, at *8 (N.D. Ill. Oct. 23, 2014) (four-and-a-half month delay); *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, No. 86 C 6159, 1987 WL 6300, at *3 (N.D. Ill. Jan. 30, 1987) (three-month delay). Furthermore, in

addition to the 11-month lapse between Vavrick's last written request to deliver an invocation and the filing of TST's Motion for a Preliminary Injunction, TST itself alleges that the City "resisted scheduling [Vavrick] for more than three years without providing a definitive answer." (Compl. ¶ 26). TST does not explain why, if it did not seek emergency relief for three years, it suddenly requires it today.

Second, TST does not seek an order requiring that Vavrick immediately be permitted to deliver the invocation. The requested injunction would instead require the City to "establish a clear process for submission and consideration of requests . . . [including] standards and criteria." (Compl. at 9.)[2] TST does not and cannot argue that Vavrick will necessarily deliver an invocation even if the Court grants the requested relief and the City implements a new invocation policy. Because TST seeks only the implementation of a policy under which Vavrick's request would be considered, his case is unlike cases where courts have held that an injunction was immediately required to allow for speech while the speech was still relevant. *Cf. ACLU v. City of St. Charles*, 794 F.2d 265, 274 (7th Cir. 1986) (noting that cases involving speech may warrant emergency treatment where the injunction affects speech that is "addressed to transitory issues, and becomes stale when the issues pass away").

Third, even if Vavrick were selected under a new process implemented by the City on an emergency basis, the logistical reality is that the next opportunity to deliver an invocation before City Council will likely not be until mid-September at the very earliest, given City Council's traditional August recess. *See* July 20, 2022 Public Notice, OFFICE OF THE CITY CLERK, https://chicityclerkelms.chicago.gov/Meetings/ (setting next regular meeting of City Council for

---

2    In response to the Court's question regarding whether a preliminary injunction "would necessarily entail allowing [the] organization to give the invocation," Plaintiffs' attorney confirmed that while an opportunity for Vavrick to deliver an invocation is "obviously . . . the goal," it is not part of the preliminary injunctive relief sought. (June 21, 2023 H'rg Tr. 3:13–4:12.)

September 21, 2022); July 21, 2021 Public Notice, OFFICE OF THE CITY CLERK,

https://chicityclerkelms.chicago.gov/Meetings/ (setting next regular meeting of City Council for

September 14, 2021).

Rather than alleging any facts to show irreparable harm in the absence of a preliminary

injunction, TST relies on the blanket assertion that "most courts hold that no further showing of

irreparable injury is necessary" when a deprivation of First Amendment rights is alleged. (Mot.

at 21 (quoting *Ezell v. City of Chicago*, 651 F. 3d 684 (7th Cir. 2011)). But even *Ezell* states that

the loss of a First Amendment right is "frequently" — not always — "presumed to cause

irreparable harm." 651 F.3d at 699. And critically, no case TST cites to support its sweeping

assertion that it should be excused from showing a likelihood of irreparable injury addresses an

Establishment Clause claim, let alone one similar to TST's claim here. Instead, TST cites cases

involving free speech and association claims. In *ACLU v. Alvarez*, 679 F.3d 583, 595 (7th Cir.

2012), the Seventh Circuit enjoined Illinois's eavesdropping statute because it burdened "free

speech and free press." *Id.* at 595. In *Brownsburg Area Patrons Affecting Change v. Baldwin*,

137 F.3d 503 (7th Cir. 1998), the plaintiff alleged "the loss of the freedom of speech." *Id.* at 507.

TST also cites the plurality opinion in *Elrod v. Burns*, 427 U.S. 347, 373 (1976), which states

that an injunction was warranted because the respondents' First Amendment right of association

was "threatened or in fact being impaired at the time relief was sought," because the respondents

were "threatened with discharge" or required to support a political party "to avoid discharge." *Id.*

at 373. The rationale underpinning these decisions was that First Amendment rights to speech

and expression would be chilled during the pendency of litigation, a harm that could not be

redressed after final judgment. But here, that rationale does not apply: TST's right to free speech

is not at issue, nor is its right to association threatened. None of the cases TST cites involved

allegations like TST's claim that the City's for selecting invocators is insufficiently "objective." (Mot. at 19.) As explained above, the specific allegations at issue here present no likelihood of irreparable harm that could not be rectified after final judgment.

And at bottom, "in order to allege irreparable harm, [TST] must successfully allege harm" in the first place. *Mahwikizi v. Ctrs. for Disease Control & Prevention*, 573 F. Supp. 3d 1245, 1255 (N.D. Ill. 2021). As set forth below and in the City's Motion to Dismiss, TST has not demonstrated it is likely to succeed on its claims. "Without showing harm to [its] First Amendment rights, [it] cannot show irreparable harm to them" either. *Id*. Absent any likely and immediate risk of irreparable harm, this case should proceed in the usual course.

## II.     TST Is Unlikely To Succeed On The Merits Of Its Claims.

Even if TST could show a likelihood of irreparable harm, it is not likely to succeed on the merits of its claims. In support of this point, the City incorporates its arguments from its Motion to Dismiss the Complaint. Namely, TST cannot establish a claim under the First Amendment because invocations are government speech, the content of which is controlled by the City, and which are not subject to limitations under the Free Speech Clause. And TST's allegations do not state a claim under the Establishment Clause because the City's invocations are in line with historical practice and do not disparage or denigrate any religion. Because TST is not likely to succeed on its First Amendment claims, it is not entitled to a preliminary injunction.

## III.    The Balance Of Harms Favors Allowing The City To Determine The Content Of Its Own Government Speech.

Parties seeking preliminary injunctions must demonstrate not only that they will likely suffer irreparable harm in the absence of relief, but that such harm favors issuance of an injunction when "balanced against any harm to the non-moving party and the public interest." *Cassell v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021) (citation and quotation marks omitted).

And where, as here, a party cannot show a strong likelihood of success in the merits, it must put forth a stronger showing that the equities weigh in its favor to justify injunctive relief. *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (consideration of injunction request "involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa").

Here, TST fails to establish that the balance of the harms tips in its favor — much less in a way that would offset the weakness of its case on the merits. As discussed above, TST seeks an injunction compelling the City to implement policies for the selection of invocation speakers. TST does not — and, indeed, may not — seek an order compelling the City to permit Vavrick to deliver an invocation, as such an order would directly infringe upon government speech. *See, e.g.*, *Ctr. for Inquiry, Inc. v. Marion Cir. Ct. Clerk*, 758 F.3d 869, 874 (7th Cir. 2014) (cases regarding legislative prayer "concern what a chosen agent of the government says as part of the government's own operations"). Thus, TST's purported harm in the absence of an injunction stems from Vavrick's inability to *apply* to deliver an invocation pursuant to a hypothetical future policy. As discussed, TST has not shown that this constitutes irreparable harm, and it does not.

And any harm TST has allegedly suffered is not outweighed by the burden a mandatory injunction would impose on the City's right to select the content of its government speech. The Supreme Court has consistently emphasized government bodies' right to select the content of their speech. For instance, the Supreme Court has affirmed that the government is "entitled to say what it wishes," and may "take legitimate and appropriate steps to ensure that its message is neither garbled nor distorted." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 833 (1995); *see also Shurtleff v. Boston*, 142 S. Ct. 1583, 1589 (2022) ("When the government wishes to state an opinion, to speak for the community, to formulate policies, or to

implement programs, it naturally chooses what to say and what not to say."). As the Supreme Court has explained, the government's freedom "to express its views" is essential to the function of democratic governance. *Pleasant Grove City v. Summum*, 555 U.S. 460, 468 (2009). If government entities did not enjoy the freedom to speak, "debate over issues of great concern to the public would be limited to those in the private sector, and the process of government as we know it radically transformed." *Id.* (citation and quotation marks omitted).

TST argues that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." (Mot. at 21 (citing *Elrod*, 427 U.S. at 373 (plurality op.)). But it is the City, not TST, that faces potential constraints on its protected speech here, because TST asks the Court to issue an order which would constrain the City's freedom to determine the content of its own speech. Accordingly, the balance of the parties' interests weighs decisively in the City's favor and against TST's motion for a preliminary injunction.

## IV. An Injunction Is Not In The Public Interest.

The issuance of the injunction is also against the public interest. For the reasons above, the City has taken no unconstitutional action, meaning that no injunction is necessary to further the public interest. And while TST is correct that "it is always in the public interest to protect First Amendment liberties," (Mot. at 21–22), that maxim cuts against it here for the reasons set forth in the preceding section: the injunction TST seeks would limit the City's ability to determine the content of its own government speech, infringing its free speech rights. *See Pulphus v. Ayers*, 249 F. Supp. 3d 238, 254–55 (D.D.C. 2017) (finding public interest weighed against issuance of injunction where "granting a preliminary injunction would harm the government by interfering with its ability to control the content of its own speech"). TST's requested injunction should be denied for this reason as well.

## CONCLUSION

WHEREFORE, the City respectfully requests that the Court deny TST's Motion and

grant the City such further relief as is just and proper.

Date:   July 19, 2023

Respectfully submitted,

BRADLEY G. WILSON
bradley.wilson@cityofchicago.org
DAVID BRANDON SMITH
david.smith4@cityofchicago.org
ANNA A. NORNES[3]
anna.nornes@cityofchicago.org
City of Chicago, Department of Law
Constitutional and Commercial
  Litigation Division
2 North Lasalle Street, Suite 520
Chicago, Illinois 60602
(312) 744-7686 / 7220 / 4216

*Attorneys for the City*

**MARY B. RICHARDSON-LOWRY,**
**Corporation Counsel for**
 **the City of Chicago**

By:    */s/ Bradley G. Wilson*
        Bradley G. Wilson
        Senior Counsel
        City of Chicago Department of Law

---

[3]    Law student on the brief under Illinois Supreme Court Rule 711.