## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

THE SATANIC TEMPLE, INC., and
ADAM VAVRICK,

      Plaintiffs,

        v.

THE CITY OF CHICAGO,

      Defendant.

No. 23-cv-2780

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR
## MOTION FOR A PRELIMINARY INJUNCTION

Plaintiffs, The Satanic Temple, Inc. ("TST") and Adam Vavrick, through counsel, respectfully submit the following reply in support of their motion for a preliminary injunction.

### INTRODUCTION

Plaintiffs' motion for a preliminary injunction is premised on three facts: (1) the City of Chicago vests officials in the City Clerk's office with unconstrained discretion to select invocators; (2) the Clerk engages in arbitrary and discriminatory exclusion of those whose views it disfavors; and (3) TST and Minister Adam Vavrick were excluded from the opportunity to provide an invocation because of City officials' disagreement with and distaste for their beliefs. *See* ECF 7-3 (email to the clerk's office from Ald. LaSpata stating that he does not support Plaintiffs' being allowed to give an invocation because it would be a "betrayal of [his] personal faith.") The City does not contest these facts.

The City's practices are a far cry from the invocation practices that have upheld by the courts, including the legislative prayer practices upheld in *Town of Greece v. Galloway*, 572 U.S. 565 (2014), where the Town "at no point excluded or denied an opportunity to a would-be prayer giver," including an atheist (*id*. at 571) and "would welcome a prayer by any minister or layman who wished to give one." *Id*. at 586. Nonetheless, contrary to existing law, the City claims that Plaintiffs' motion for a preliminary injunction should be denied because its practices are "in line" with practices upheld in *Town of Greece* and other cases.

As shown below, the City has not put forth any valid argument for denying Plaintiffs' motion for a preliminary injunction and Plaintiffs' motion should accordingly be granted.

## ARGUMENT

## I. Plaintiffs Have Made the Requisite Showing that they Are Suffering and Will Continue to Suffer Irreparable Injury

The City first argues that Plaintiffs are not entitled to a preliminary injunction because they have not shown they will suffer irreparable harm in the absence of injunctive relief. Def. Resp., ECF 19, at 3-6. The undisputed facts show that the City is engaging in an ongoing deprivation of Plaintiffs' First Amendment rights, which is "irreparable harm" per se. *Elrod v. Burns,* 427 U.S. 347, 373 (1976)*; ACLU of Ill. v. Alvarez*, 679 F.3d 583, 590-91 (7th Cir. 2012).

### A. Plaintiffs Did Not Unreasonably Delay

The City claims that Plaintiffs cannot demonstrate irreparable harm because they have delayed in requesting an injunction. In particular, the City contends that

because Plaintiffs engaged in conversations with City officials about their request to provide an invocation over the course of three years before filing suit, their injury is not sufficiently "urgent" to warrant an injunction. Def. Resp. at 3-4.

However, where, as here, a party has been engaged in negotiations with the party against whom an injunction is sought in an attempt to avoid having to seek relief from the court, delay in filing suit or bringing a motion for injunctive relief is not a sound basis to deny a preliminary injunction. In *Int'l Ass'n of Fire Fighters, Local 365 v. City of E. Chi.*, 56 F.4th 437 (7th Cir. 2022), the Seventh Circuit held that an "eighteen-month delay in applying for a preliminary injunction" did not defeat the union's claim that its members would suffer irreparable harm in the absence of an injunction. 56 F.4th at 451. Prior to bringing a motion for a preliminary injunction, the union had been working "on multiple fronts" to resolve their issues with the defendants. *Id.* The Seventh Circuit held that "[t]hese actions signaled to the defendants that the [plaintiffs] were dissatisfied with the [defendant's change in work schedules] and would work to undo it." *Id.* at 452 (citations omitted).

Here, as in *Local 365*, there was nothing unreasonable about the Plaintiffs' actions. Plaintiffs did not sit idly by for years before filing suit. Rather, the record shows that Plaintiffs consistently and repeatedly sought to resolve this matter with the City without involving the courts, and the City gave Plaintiffs the impression that court involvement would not be necessary because it was planning to schedule Minister Adam Vavrick to provide an invocation in the near future:

- January 2020: Minister Vavrick speaks to Chauncy Rice in the City Clerk's office about his interest in providing an invocation before City Council and follows up with an email with information regarding TST's Illinois congregation. ECF 7-2, Decl. of Vavrick, at 2-3;

- January 14, 2020: Mr. Rice emails Vavrick stating, "Thanks for sending that information over! I'll review the information provided and get back to you shortly." *Id*. at 7;

- August 8, 2021: In response to a follow-up message from Vavrick, Ald. Daniel LaSpata attributes the City's failure to schedule Vavrick to provide an invocation to a change in personnel in the Clerk's office and offers to put Vavrick in touch with the person "who is now scheduling invocations." *Id*. at 8;

- August 31, 2021: Ariana Garcia in the Clerk's office writes to Vavrick, "Thank you so much for your interest. We will be in touch with a confirmation on upcoming City Council invocation details." *Id*. at 11;

- October 20, 2021: Ms. Garcia writes to Vavrick: "Apologies for the delay. It's a bit hectic with budget, I will follow up after this budget cycle." *Id*. at 14;

- May 31, 2022: Ms. Garcia writes to Vavrick: "We are working on this request and greatly appreciate your patience." *Id*. at 13;

- July 13, 2022: Vavrick sends a follow-up email asking for an update. *Id*. at 18;

- February 6, 2023: Vavrick, through counsel, writes to corporation counsel regarding the request to provide an invocation and the City's responses. *Id*. at 4;

- March 16, 2023 and March 30, 2023: Vavrick and his counsel speak with Ellen McLaughlin in the City's office of corporation counsel. Ms. McLaughlin states that Plaintiffs' request to provide an invocation hasn't been denied, but could not say when or whether it would be permitted. *Id*. at 4-5;

- May 3, 2023: Plaintiffs file suit and bring their motion for a preliminary injunction prior to the City's responsive pleading deadline. ECF 1; ECF 7.

Based on this history, it was reasonable for Plaintiffs to continue negotiations

with the City regarding the invocation rather than seek immediate relief from the

court, particularly given that the City repeatedly assured Plaintiffs that it would voluntarily schedule Minister Vavrick to provide an invocation. This is not a case where Plaintiffs gave the City the indication that they were no longer pursuing their request to provide an invocation; nor is it a case where the delay is without explanation. *See Ty, Inc. v. Jones Grp. Inc.*, 237 F.3d 891, 903 (7th Cir. 2001) ("[E]vidence of mere delay alone, without any explanation … of why such a delay negatively affected Jones, would not lessen Ty's claim of irreparable injury."); *BMO Harris Bank NA v. Lailer*, No. 16-CV-545-JPS, 2016 U.S. Dist. LEXIS 146143, at *29 (E.D. Wis. Oct. 21, 2016) (delay in filing a motion for an injunction did not undermine claim of irreparable harm where the party seeking the injunction was "was actively negotiating" with the defendants and only filed a preliminary injunction motion after it "determined that its out-of-court efforts were failing to resolve this matter.")

Given that loss of First Amendment freedoms "for even minimal periods of time unquestionably constitutes irreparable injury," injunctive relief is warranted here to halt the ongoing harm to Plaintiffs. *Backpage.com, LLC v. Dart*, 807 F.3d 229, 238-39 (7th Cir. 2015) (citation omitted); *see also Child Evangelism Fellowship of Ind., Inc. v. Ind. Metro. Sch. Dist. of Pike Twp.*, 275 F. Supp. 3d 951, 953 n.1 (S.D. Ind. 2017) ("The District notes that over a year passed between the last correspondence between counsel and the filing of this lawsuit, and suggests that the delay demonstrates a lack of irreparable harm such that preliminary relief is not appropriate. While a lack of urgency on the part of the plaintiff can certainly be

relevant in cases in which the existence of irreparable harm is questionable, the Court does not believe that to be the case in the First Amendment context.") (*citing Backpage*, 807 F.3d at 239).

## B. Plaintiffs Are Suffering Irreparable Harm

In addition, the City asserts a variety of underdeveloped arguments that Plaintiffs will not suffer irreparable injury in the absence of injunctive relief. Namely, the City claims that injunctive relief is not warranted because (1) City Council is in recess and the next opportunity to deliver an injunction is not until "mid-September at the very earliest"; (2) Plaintiffs will not necessarily be permitted to give an injunction if the Court orders the City to adopt a new policy for selection of invocators; and (3) cases holding that the impairment of First Amendment freedoms constitutes an irreparable injury do not apply to Plaintiffs' claims. Def. Resp. at 4-6. None of these arguments are availing.

### 1. Plaintiffs' Request for Relief Is Urgent

Defendant's claim that there is no urgency to Plaintiffs' motion because City Council is not currently in session is easily dismissed. City Council's next meeting is September 13, 2023—less than six weeks away. *See* Office of the City Clerk Meeting Calendar.[1] Preparation of the agendas for upcoming meetings, including identification of clergy members who will be providing invocations, will be completed in advance of that date. If an injunction is denied and the case proceeds to discovery, summary judgment, and trial, it could very well be years before any

---

[1]   https://chicityclerkelms.chicago.gov/Meetings/ (last visited August 1, 2023).

action is taken to protect Plaintiffs' First Amendment rights. *See* U.S. Courts Federal Civil Caseload Statistics through March 31, 2023 (showing median time from filing to final disposition of civil cases tried in the Northern District of Illinois is 49.8 months).[2]

### 2. Plaintiffs Are Subject to an Unconstitutional Policy and Are Being Injured by the Application of that Policy to Them

Defendant's claim that Plaintiffs will not suffer any injury in the absence of an injunction because they will not "necessarily" be approved to deliver an invocation "even if the City implements a new invocation policy" fails for two reasons.

First, the argument is based on a false premise. That is, Defendant presumes that the only injury Plaintiffs are suffering is not being given an opportunity to provide an invocation. This is not correct. Courts have repeatedly recognized that being subject to an unconstitutional policy is itself an actionable injury that can warrant both injunctive relief and damages, even if the plaintiff is not guaranteed to obtain the substantive outcome it desires. *See, e.g., Child Evangelism Fellowship of Ind., Inc.*, 275 F. Supp. 3d at 957 ("in order to protect CEF's right not to be subject to an unconstitutional policy, the Court preliminarily enjoins the District from charging CEF a fee for using the school's facilities … until such time as the District develops a policy with the requisite specific, narrowly drawn, and reasonable criteria for determining which groups are permitted to use its facilities without charge for which purposes."); *see also Southworth v. Board of Regents of*

---

[2] https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2023/03/31 (last visited August 1, 2023).

*University of Wisconsin System*, 307 F.3d 566, 595 (7th Cir. 2002) (holding that a facial challenge could be made against a policy that failed to include "narrowly drawn and reasonable criteria" for determining what groups can access a limited forum and that "[t]he requirement of viewpoint neutrality includes a mandate that a decisionmaker not possess unbridled discretion."); *see also Carey v. Piphus*, 435 U.S. 247 (1978) (persons subject to an unconstitutional policy were entitled to pursue claim for nominal damages even if they did not suffer injury as a result of the policy); *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795 (7th Cir. 2016) (affirming award of nominal damages to business that was subject to a licensing ordinance that violated the First Amendment even though business never sought or obtained a license).

Here, the City admits that it has no policy, standards or criteria constraining City officials' discretion to decide who is eligible to provide an invocation, thereby allowing City officials to exclude disfavored religions for illegitimate reasons such as City officials' personal distaste for particular beliefs. Plaintiffs are currently being subject to this unconstitutional policy and will continue to be subject to this policy in the absence of injunctive relief. Being subject to an unconstitutional policy is itself a constitutional harm that merits an injunction without regard to whether Plaintiffs are ultimately allowed to give an injunction under a constitutionally sound policy.

Second, the City is wrong that the only relief Plaintiffs can seek is a court order requiring the City to adopt clear, non-discriminatory standards for selecting

invocators. Plaintiffs seek an injunction requiring the City to afford them the opportunity to provide an invocation on the same basis as other congregations in the City. *See* ECF 7, Plf. Mot., at 22 (requesting that the Court prohibit the City from "excluding disfavored minority religions from the opportunity to provide an invocation."). It is well established that once a constitutional violation is proven, district courts have the discretion to craft an appropriate remedy to address the harm being suffered by the party seeking an injunction. *Rizzo v. Goode*, 423 U.S. 362, 376-77 (1976) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies. … [T]he nature of the violation determines the scope of the remedy.") (citations omitted).

It is undisputed that Chicago is excluding Plaintiffs from the opportunity to provide an invocation because of City's officials disapproval of their religious beliefs. If the court determines that this violates Plaintiffs' rights under the Establishment Clause, the Court has discretion to order suitable equitable relief that addresses the harm Plaintiffs are suffering, *i.e.*, ordering the City to schedule Minister Adam to provide an invocation by a date certain.

For both of these reasons, the City is wrong that Plaintiffs are not suffering irreparable harm in the absence of an injunction.

### 3. Cases Holding that Loss of First Amendment Freedoms Constitutes Irreparable Harm Are Applicable

The City argues that Plaintiffs have not shown irreparable harm because cases holding that the loss of First Amendment freedoms presumptively constitutes

irreparable harm do not apply to Plaintiffs' Establishment Clause claims. Def. Mot. at 5-6. This argument fails for two reasons.

First, the City is incorrect that this case involves only Establishment Clause violations. As set forth in Plaintiffs' motion for a preliminary injunction and response to Defendant's motion to dismiss, Plaintiffs also have pled a valid First Amendment free speech/free exercise claim regarding the City's arbitrary and standardless process for selecting invocators. *See* ECF 20, Plf. Resp. to Mot. Dismiss, at 2-12; ECF 7, Plf. Mot. Prelim. Inj., at 16-20 (same).

Second, even if the City is correct that Plaintiffs' only viable claim arises under the Establishment Clause, courts have repeatedly extended the cases holding that loss of First Amendment freedoms constitutes irreparable harm to the Establishment Clause context. *See Doe v. Pittsylvania Cty.*, 842 F. Supp. 2d 927, 935 (W.D. Va. 2012) (granting preliminary injunction in Establishment Clause challenge to county's legislative prayer practice, finding that "plaintiff's allegations establish a cognizable First Amendment injury, and she suffers irreparable harm every time she attends a Board meeting during the course of this litigation"); *Freedom from Religion Found. v. Concord Cmty. Schs*, 148 F. Supp. 3d 727, 741 (N.D. Ind. 2015) (finding that plaintiff had "presumptively" made a showing of irreparable harm in case alleging violation of the Establishment Clause); *H.S. v. Huntington Cty. Cmty. Sch. Corp.*, 616 F. Supp. 2d 863, 879 (N.D. Ind. 2009) (same); *Aziz v. Trump*, 234 F. Supp. 3d 724, 737 (E.D. Va. 2017) ("the threat of an

10

Establishment Clause violation in and of itself constitutes irreparable harm.")
(*citing Elrod*, 427 U.S. at 373).

For all of these reasons, Plaintiffs have demonstrated irreparable harm and the City's arguments to the contrary should be rejected.

## II. Plaintiffs Are Likely to Succeed on the Merits

Next, the City makes a perfunctory, one-paragraph argument that Plaintiffs' motion for a preliminary injunction should be denied because they are not likely to succeed on the merits of their claims. Def. Resp. at 6. For all of the reasons set forth in Plaintiffs' motion for a preliminary injunction and response to Defendant's motion to dismiss, Plaintiffs respectfully disagree. The City has put forth neither substantive argument nor evidence to contest Plaintiffs' points and authorities, so Plaintiffs do not repeat their arguments on the merits here. *See* ECF 7, Plf. Mot. for a Prelim. Inj.; ECF 20, Plf. Resp. to Def. Mot. to Dismiss.

## III. The Balance of Harms Favors Plaintiffs and an Injunction Is in the Public Interest

Finally, the City argues that Plaintiffs' motion for a preliminary injunction should be denied because the balance of harms tilts in the City's favor and the public interest does not favor the issuance of injunctive relief. Def. Br. at 6-8. The City's sole basis for this argument is its claim that invocations are "government speech" and thus an injunction would infringe on the City's ability to control its own speech. *Id*. at 7 (arguing that Plaintiffs "may not seek an order compelling the City to permit Vavrick to deliver an invocation, as such an order would directly infringe upon government speech.") As set forth in Plaintiffs' previous briefing, the City is

wrong that legislative invocations offered by volunteer clergy from the community are properly categorized as "government speech." *See* ECF 20 at 2-12. The City's brief in opposition underscores the weakness of its argument on this front.

As explained in Plaintiffs' opposition to the City's motion to dismiss, the policy underlying the "government speech" doctrine is that the government must be able to communicate a consistent and coherent message to advance government policies or objectives. *See* ECF 20 at 7-9 (*citing, inter alia*, *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200 (2015)). The City agrees with Plaintiffs that the purpose of the government speech doctrine is to allow the government to formulate policies or implement programs and, in so doing, ensure that "its message is neither garbled nor distorted." Def. Br. at 7 (citations omitted). But the City identifies neither what message it is seeking to convey through its legislative invocations; nor how this message would be "distorted" by the inclusion of TST.

Indeed, it is hard to imagine what permissible message the City could be intending to convey by welcoming invocators from some religions while excluding others. Is the City's message that only some religions have a place in the public sphere? Or that Chicago officially endorses the Christian, Jewish and Muslim faiths, and no others? Such messages would run headlong into the Establishment Clause's prohibition against government speech endorsing a particular religion. *See, e.g.*, *Larson v. Valente*, 456 U.S. 228, 244 (1982) ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another"); *Town of Greece*, 572 U.S. at 582 ("The First Amendment is

not a majority rule, and government may not seek to define permissible categories of religious speech"); *Lund v. Rowan Cnty.*, 863 F.3d 268, 281 (4th Cir. 2017) (finding the government was "elbow-deep in the activities banned by the Establishment Clause—selecting and prescribing sectarian prayers.")

Or, is the City's message that some religions are "too controversial" for public recognition? That too runs headlong into the Establishment Clause's prohibition against government speech denigrating particular religions. *See, e.g., Marsh v. Chambers*, 463 U.S. 783, 794–95 (1983) (legislative prayers cannot, consistent with the Establishment Clause be "exploited to proselytize or advance any one, or to disparage any other, faith or belief"); *McCreary Cty. v. ACLU*, 545 U.S. 844, 878 (2005) ("the Framers intended the Establishment Clause to require governmental neutrality in matters of religion, including neutrality in statements acknowledging religion"); *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 2427 (2022) ("the Establishment Clause does not include anything like a modified heckler's veto, in which religious activity can be proscribed based on perceptions or discomfort") (cleaned up).

While it is clear that legislative bodies have latitude to open their meetings with a prayer, a "policy or practice of discriminating against minority faiths" in selecting invocators violates the Establishment Clause. *Town of Greece*, 572 U.S. at 573. The City does not dispute that it has excluded TST and Vavrick from the opportunity to provide an invocation because of City officials' personal aversion to their beliefs. So even if the invocations are government speech, the balance of harms still favors

Plaintiffs and an injunction requiring the City to bring its practices in line with the Constitution is undoubtedly in the public interest.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' opening brief, Plaintiffs respectfully request that this Court grant Plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

/s/ Adele D. Nicholas
/s/ Mark G. Weinberg
/s/ Matt Kezhaya
*Counsel for Plaintiffs*

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
(847) 361-3869
adele@civilrightschicago.com

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
(773) 283-3913
mweinberg@sbcglobal.net

Matt Kezhaya
Ark. # 2014161
Minn. # 0402193
Crown Law
150 S. Fifth S., Ste. 1850
Minneapolis, MN 55402
Direct: (479) 431-6112
General: (612) 276-2216
matt@crown.law