IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| THE SATANIC TEMPLE, INC., and ADAM VAVRICK, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO, <br><br> Defendant. | Case No. 23-cv-2780 <br><br> Hon. Joan H. Lefkow |

## ANSWER TO COMPLAINT

Defendant City of Chicago (the "City") hereby submits its Answer to Plaintiffs' Complaint. Each paragraph is set forth below, followed by the City's response. Headings of sections are copied from the Complaint.

**Nature of the Case**

1. Invocations before legislative bodies are a time-honored tradition that "lend gravity to the occasion and reflect values long part of the Nation's heritage." *Town of Greece v. Galloway*, 572 U.S. 565, 583 (2014). An invocation that is "solemn and respectful in tone, that invites lawmakers to reflect upon shared ideals and common ends before they embark on the fractious business of governing," serves to "elevate the purpose of the occasion and to unite lawmakers in their common effort." *Id*. However, the Establishment Clause requires that the opportunity to deliver a legislative prayer be made available in a non-discriminatory manner. *Id.*, at 585-86; *see also American Legion v. American Humanist Ass'n*, 139 S. Ct. 2067, 2089 (2019) (the practice must stand out "as an example of respect and tolerance for differing views, an honest endeavor to achieve inclusivity and nondiscrimination, and a recognition of the important role that religion plays in the lives of many Americans").

        **ANSWER:** The City admits that invocations before legislative bodies are a time-honored tradition and that invocations can serve the purposes listed here, among others. The remainder of this paragraph purports to quote and

characterize judicial opinions and contains legal conclusions, not factual allegations, to which no response is required.

2. The City of Chicago has a longstanding practice of inviting clergy to open each meeting of its City Council with a prayer.

**ANSWER:** The City admits that the Clerk's Office maintains this practice.

3. Plaintiffs, The Satanic Temple Inc. ("TST"), and Adam Vavrick, an ordained minister of the Satanic Temple and a leader of TST's Illinois congregation, seek to take part in this time-honored tradition by delivering an invocation before a City Council meeting. For more than three years, the City has rebuffed Plaintiffs' efforts to provide an invocation without providing any clear explanation of why.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to Plaintiff Vavrick's position within TST, admits that he seeks to deliver an invocation, and denies the remainder of the allegations in this paragraph.

4. The City's practices with regard to invocations before City Council violate the First Amendment in two ways:

- first, the City violates the First Amendment's establishment clause by excluding disfavored minority faiths from the opportunity to provide an invocation; and

- second, the City grants the City Clerk unconstrained discretion to decide who can and cannot deliver an invocation because it lacks any standards for selection of clergy to give invocations and has not established a uniform process for members of the clergy to apply to give an invocation.

**ANSWER:** The City denies the allegations in this paragraph.

5. Plaintiffs seek injunctive relief, declaratory relief, and damages for violation of their First Amendment rights.

**ANSWER:** The City denies Plaintiffs are entitled to any relief.

## Jurisdiction and Venue

6. Jurisdiction for Plaintiffs' claims is based on 28 U.S.C. §§ 1331 and 1343(a).

> **ANSWER:** The City admits that the Court has subject matter jurisdiction and denies Plaintiffs are entitled to relief.

7. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), in that the events giving rise to the Plaintiffs' claims arose in this district.

> **ANSWER:** The City admits that venue is proper in this District and denies that Plaintiffs are entitled to relief.

## The Parties

8. Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois, and located in Cook County, Illinois.

> **ANSWER:** The City admits the allegations in this paragraph.

9. Plaintiff The Satanic Temple, Inc. is a religious corporation organized under the laws of Massachusetts and headquartered in Salem, Massachusetts.

> **ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

10. Plaintiff Adam Vavrick is a resident of the City of Chicago.

> **ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

## Relevant Facts

*The Satanic Temple*

11. The Satanic Temple ("TST") is a non-theistic religion, federally recognized as a church and a religious public charity. IRC §§ 170(b)(1)(A)(i); 501(c)(3). The mission of TST is to encourage benevolence and empathy among all people, reject tyrannical authority, advocate for common sense and justice, and be directed by the human conscience to undertake noble pursuits. TST has more than half a million members located in every state (including Illinois) and internationally. The Satanic Temple encourages its members to engage in civic advocacy,

confront hateful, repressive and exclusionary ideologies, and promote the common good in accordance with the Seven Tenets.[1]

> **ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and the accompanying footnote.

*The Satanic Temple Illinois*

12. The Satanic Temple's Illinois Congregation ("TST-IL"), originally founded in 2016 as TST-Chicago, is a congregation in The Satanic Temple's Society of Congregations. Its mission is to promote Satanic education within the Congregation, to be a force for positive change within Illinois, to provide a safe and welcoming community for marginalized members of society. TST-IL has been recognized as a bona fide religious congregation by the State of Illinois via its annual holiday display in the Illinois State Capitol Rotunda in Springfield and by Cook County in its acceptance of marriage licenses solemnized by TST-IL clergy.

> **ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

*Adam Vavrick, Minister of Satan*

13. Minister Adam Vavrick is a Chicago resident and an ordained Minister of Satan. He serves as the Co-Congregation Head of The Satanic Temple Illinois. Minister Adam has served in leadership roles for The Satanic Temple Illinois since April of 2020 and has been actively engaged with TST since 2014.

---

[1] The Seven Tenets are as follows: "(1) One should strive to act with compassion and empathy toward all creatures in accordance with reason; (2) The struggle for justice is an ongoing and necessary pursuit that should prevail over laws and institutions; (3) One's body is inviolable, subject to one's own will alone; (4) The freedoms of others should be respected, including the freedom to offend. To willfully and unjustly encroach upon the freedoms of another is to forgo one's own; (5) Beliefs should conform to one's best scientific understanding of the world. One should take care never to distort scientific facts to fit one's beliefs; (6) People are fallible. If one makes a mistake, one should do one's best to rectify it and resolve any harm that might have been caused; and (7) Every tenet is a guiding principle designed to inspire nobility in action and thought. The spirit of compassion, wisdom, and justice should always prevail over the written or spoken word." *See* https://thesatanictemple.com/blogs/the-satanic-temple-tenets/there-are-seven-fundamental-tenets

4

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

14. As a Minister of Satan and active member of his religious community, Minister Adam regularly ministers to TST-IL congregants at monthly services, officiates weddings for couples in Illinois and elsewhere, and actively engages with the interfaith community throughout Illinois.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

15. Minister Adam's role as a bona fide religious leader has been recognized by the State of Illinois in connection with TST-IL's annual holiday display in the state capitol; by the Cook County Bureau of Vital Records, which accepts marriage licenses solemnized by Minister Adam; and by the Chicago Police Department, which has invited his participation in its "Faith & Blue" initiative.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

*City Council Practices Regarding Invocations*

16. Chicago's City Council regularly opens its meetings with the recitation of the Pledge of Allegiance and an invocation delivered by a local clergy member. In the typical invocation, a member of the clergy offers a brief, uplifting prayer in which he or she asks for spiritual guidance for members of City Council as they undertake their challenging work of representing the diverse communities of the City of Chicago.

**ANSWER:** The City admits the allegations in this paragraph.

17. Recent invocations have been delivered by Pastor Byron Whitehead of Mount Carmel Bible Church (February 1, 2023), Pastor Noah Chung of Park Community Church in Hyde Park (January 18, 2023), and Bishop James C. Austin, Sr. of St. Luke Church of God in Christ (December 14, 2022).

> **ANSWER**: The City admits the allegations in this paragraph.

*History of Plaintiffs' Efforts to Provide an Invocation*

18. In accordance with the City's longstanding tradition of welcoming the clergy of local congregations to open meetings with a brief prayer, Minister Adam seeks to deliver an invocation before City Council. Minister Adam wishes to offer an uplifting message which draws on his deeply held beliefs and calls upon lawmakers to be guided by empathy, compassion and rationalism in their difficult jobs.

> **ANSWER:** The City admits that Plaintiff Vavrick seeks to deliver an invocation before City Council and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

19. Prior to retaining counsel to assist him with this matter, Minister Adam has long sought to avail himself of the normal channels through which invocations are scheduled. These efforts began in January 2020, when Minister Adam spoke to Chauncy Rice, who was then chief of public engagement for the Office of the City Clerk. Mr. Rice informed Minister Adam that he would be happy to schedule him to provide an invocation after "standard vetting procedures."

> **ANSWER:** The City admits that Chauncy Rice served as the Director of Intergovernmental Affairs and Public Engagement for the Office of the City Clerk in January 2020. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

20. Minister Adam followed up the conversation with an email in which he provided Mr. Rice with additional information about TST and the local congregation. Mr. Rice acknowledged receipt of the information and stated that he would get back in touch with Minister Adam in the near future. For the next several months, Minister Adam followed up with Mr. Rice approximately once a month to inquire about the status of his request to provide an invocation. These emails went unanswered.

> **ANSWER:** The City admits the allegations in the first and second sentences of this paragraph. The City further admits that Plaintiff Vavrick sent two emails to Mr. Rice in February and March of 2020 and denies the remaining allegations in this paragraph.

21. In August 2021, Minister Adam exchanged emails with Ariana Garcia, who replaced Mr. Rice as the chief of public engagement. In this email he reiterated his request to provide an invocation. Ms. Garcia acknowledged receipt of his request and was initially receptive to scheduling him to provide an invocation, but his follow-up messages went unanswered.

> **ANSWER:** The City admits the allegations in the first and second sentences of this paragraph. The City further admits that Ms. Garcia acknowledged receipt of Mr. Vavrick's email and denies the remainder of the allegations in this paragraph.

22. In October 2021, Ms. Garcia stated that she would follow up with Minister Adam after the budget cycle, but never did so.

> **ANSWER:** The City admits that, in October 2021, Ms. Garcia stated that she would follow up with Plaintiff Vavrick after the budget cycle and denies the remaining allegations in this paragraph.

23. In March 2022, Minister Adam again emailed Ms. Garcia, this time copying Steve Berlin, the Director of the Board of Ethics, describing the history of his efforts to provide an invocation and asking for guidance about the process for scheduling. Ms. Garcia responded that she was "working on this request," but did not provide any further details regarding the timeline or process. Minister Adam's follow-up emails in May 2022 were ignored.

> **ANSWER:** The City admits that Mr. Vavrick sent an e-mail to Ms. Garcia copying Mr. Berlin, but denies that it was sent in March 2022, and denies the remaining allegations in this paragraph.

24. After submitting a FOIA request to determine what had become of his many requests to provide an invocation, Minister Adam sent an additional email in July 2022, this time

7

copying the various attorneys and individuals in the mayor's office to whom his previous requests had been forwarded. He received no response.

> **ANSWER:** The City admits that Plaintiff e-mailed City employees in July 2022 and denies knowledge or information sufficient to form a belief as to the remaining allegations in this paragraph.

25. Minister Adam then retained counsel. Minister Adam and his attorney spoke to Ellen McLaughlin, an attorney in the City of Chicago's corporation counsel's Constitutional & Commercial Litigation Division, about his request to provide an invocation. During calls on March 16, 2023 and March 30, 2023, counsel for the City was unable to articulate the process for seeking to provide an invocation and could not say whether the City would permit Minister Adam to deliver an invocation.

> **ANSWER:** The City denies knowledge or information sufficient to form a belief as to when Plaintiff Vavrick retained counsel. The City admits that Plaintiff Vavrick and his attorney spoke to Ellen McLaughlin on March 16 and 30, 2023, and admits that she is an attorney in the Law Department's Constitutional & Commercial Litigation Division. The City admits that Ms. McLaughlin declined to say whether the City would permit Plaintiff Vavrick to deliver an invocation. The City denies the remaining allegations in this paragraph.

26. The City has never formally rejected Minister Adam's request to provide an invocation; rather, the City has simply resisted scheduling him for more than three years without providing a definitive answer about whether he will ever be permitted to provide an invocation.

> **ANSWER:** The City admits that it has never "formally rejected" Plaintiff Vavrick's request to provide an invocation and denies the remainder of the allegations in this paragraph.

## COUNT I
## First Amendment

27. Plaintiffs reallege and reincorporate, as though fully set forth herein, each and every allegation above.

> **ANSWER**: Defendants incorporate their responses above.

8

28. The City's practices with regard to legislative prayers before City Council violates the First Amendment in two ways: (1) the City violates the establishment clause by excluding disfavored minority faiths from the opportunity to provide an invocation; and (2) the City grants the City Clerk unconstrained discretion to decide who can and cannot deliver an invocation.

> ANSWER: The City denies the allegations in this paragraph.

29. When government bodies take part in the tradition of invocations before legislative meetings, they cannot discriminate among religions or exclude minority religions on the basis of disagreement with their beliefs. *Town of Greece v. Galloway*, 572 U.S. at 585–86.

> ANSWER: This paragraph contains legal conclusions, not factual allegations, to which no response is required.

30. When the government picks and chooses among religions—amplifying some and excluding others from the public discourse—religious liberty is threatened for all. As the Supreme Court recently noted:

> Through history, the suppression of unpopular religious speech and exercise has been among the favorite tools of petty tyrants. Our forebears resolved that this Nation would be different. Here, they resolved, each individual would enjoy the right to make sense of his relationship with the divine, speak freely about man's place in creation, and have his religious practices treated with respect.

*Shurtleff v. City of Boston*, 142 S. Ct. 1583, 1608 (2022).

> ANSWER: This paragraph contains legal conclusions, not factual allegations, to which no response is required.

31. By excluding Plaintiffs Vavrick and The Satanic Temple from providing an invocation before the City Council, while opening this forum to clergy from other faiths, Defendant violates the First Amendment's establishment clause.

9

    **ANSWER**: The City denies the allegations in this paragraph.

32. In addition, the City of Chicago lacks any established criteria for selection of members of the clergy to provide invocations before City Council.

    **ANSWER:** The City denies the allegations in this paragraph.

33. The City of Chicago also lacks any clear process by which requests to provide an invocation before City Council are to be submitted, considered and decided upon.

    **ANSWER:** The City denies the allegations in this paragraph.

34. The lack of any policy setting standards and criteria for selection of clergy members to provide an invocation before City Council violates the First Amendment because it vests unbridled discretion with the City Clerk, creating an unreasonable risk of arbitrary and discriminatory decision-making.

    **ANSWER**: The City denies the allegations in this paragraph.

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A. Enter a declaration that Defendant has violated the First Amendment;

B. Enter an injunction requiring Defendant to: (1) permit Plaintiffs to participate in providing an invocation on the same footing as other religions and; (2) establish a clear process for submission and consideration of requests to provide invocations before City Council and standards and criteria for selection of clergy members to provide invocations;

C. Award Plaintiffs compensatory and/or nominal damages for the violations of their First Amendment rights;

D. Enter judgment for reasonable attorneys' fees and costs incurred in bringing this action; and

E. Grant Plaintiffs any other relief as law and justice demand.

**ANSWER**: The City denies that Plaintiffs are entitled to this relief.

## REQUEST FOR RELIEF

Defendant City of Chicago respectfully requests that the Court enter judgment in its favor and grant the City such further relief as the Court deems just and appropriate.

Date: April 23, 2024                                    Respectfully submitted,

BRADLEY G. WILSON                                       MARY B. RICHARDSON-LOWRY,
bradley.wilson@cityofchicago.org                        Corporation Counsel for
DAVID BRANDON SMITH                                      the City of Chicago
david.smith4@cityofchicago.org
KATIE ROSE LAMB                                         By:   */s/ Bradley G. Wilson*
City of Chicago, Department of Law                            Bradley G. Wilson
Constitutional and Commercial                                 Senior Counsel
 Litigation Division
2 North Lasalle Street, Suite 520
Chicago, Illinois 60602
(312) 744-7686 / 744-7220 / 742-0797

*Attorneys for the City*